**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF ALASKA *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF CALIFORNIA *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF COLORADO *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF CONNECTICUT *ex rel.* RESPIRATORY CARE, LLC; | |
| DISTRICT OF COLUMBIA *ex rel.* RESPIRATORY CARE, LLC; | **THIRD AMENDED COMPLAINT** |
| STATE OF DELAWARE *ex rel.* RESPIRATORY CARE, LLC; | **No: 2:19-cv-02913-BHH** |
| STATE OF FLORIDA *ex rel.* RESPIRATORY CARE, LLC; | *FILED UNDER SEAL AND IN CAMERA PURSUANT TO 31 U.S.C. § 3730(b)* |
| STATE OF GEORGIA *ex rel.* RESPIRATORY CARE, LLC; | *DO NOT ENTER ON PACER* |
| STATE OF HAWAII *ex rel.* RESPIRATORY CARE, LLC; | *DO NOT PLACE IN PRESS BOX* |
| STATE OF ILLINOIS *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF INDIANA *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF IOWA *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF LOUISIANA *ex rel.* RESPIRATORY CARE, LLC; | |
| STATE OF MARYLAND *ex rel.* | |

RESPIRATORY CARE, LLC;

STATE OF MASSACHUSETTS *ex rel.* RESPIRATORY CARE, LLC;

STATE OF MICHIGAN *ex rel.* RESPIRATORY CARE, LLC;

STATE OF MINNESOTA *ex rel.* RESPIRATORY CARE, LLC;

STATE OF MONTANA *ex rel.* RESPIRATORY CARE, LLC;

STATE OF NEVADA *ex rel.* RESPIRATORY CARE, LLC;

STATE OF NEW JERSEY *ex rel.* RESPIRATORY CARE, LLC;

STATE OF NEW MEXICO *ex rel.* RESPIRATORY CARE, LLC;

STATE OF NEW YORK *ex rel.* RESPIRATORY CARE, LLC;

STATE OF NORTH CAROLINA *ex rel.* RESPIRATORY CARE, LLC;

STATE OF OKLAHOMA *ex rel.* RESPIRATORY CARE, LLC;

STATE OF RHODE ISLAND *ex rel.* RESPIRATORY CARE, LLC;

STATE OF TENNESSEE *ex rel.* RESPIRATORY CARE, LLC;

STATE OF TEXAS *ex rel.* RESPIRATORY CARE, LLC;

STATE OF VERMONT *ex rel.* RESPIRATORY CARE, LLC;

STATE OF VIRGINIA *ex rel.* RESPIRATORY CARE, LLC; *and*

STATE OF WASHINGTON *ex rel.*
RESPIRATORY CARE, LLC;

                Plaintiffs,

    v.

RESPIRONICS, INC.;

ADVOCATE AURORA HEALTH, INC.;
ADVOCATE HEALTH CARE NETWORK;
ADVOCATE HEALTH PARTNERS;
ADVOCATE HEALTH AND HOSPITALS
CORPORATION;

AEROCARE HOLDINGS, INC.; AEROCARE,
INC.; AEROCARE HOME MEDICAL
EQUIPMENT, INC.; AEROCARE HOME
MEDICAL, INC.;

AT HOME HEALTH EQUIPMENT, LLC;

FITZSIMMONS SURGICAL SUPPLY, INC.;

HAYAT HOME MEDICAL EQUIPMENT
INCORPORATED;

INTEGRATED RESPIRATORY SERVICES,
INC.; INTEGRATED HOME CARE
SERVICES, INC.; INTEGRATED HOME
CARE SERVICES CHICAGO, INC.;
INTEGRATED RESPIRATORY SERVICES,
INC.;

LINCARE HOLDINGS INC.; ALPHA
RESPIRATORY INC.; GAMMA
ACQUISITION INC.; HEALTH CARE
SOLUTIONS AT HOME INC.; HOMECARE
EQUIPMENT NETWORK INC.; LINCARE
INC.; LINCARE LICENSING INC.; LINCARE
PHARMACY SERVICES INC.; LINCARE
PROCUREMENT INC.; MED 4 HOME INC.;
LINCARE OF CANADA ACQUISITION
INC.; CARING RESPONDERS LLC; HCS
LANCASTER LLC; LINCARE EQUIPMENT
LLC; LINCARE LEASING LLC; MDINR,

LLC; MEDIMATICS LLC; PULMOREHAB
LLC; LINCARE PULMONARY REHAB
MANAGEMENT, LLC; COMMUNITY
PHARMACY SERVICES, LLC; ACRO
HEALTHCARE, LLC; LINCARE ONLINE
LLC; LINCARE PULMONARY REHAB
SERVICES OF FLORIDA, P.L.; OPTIGEN,
INC.; MRB ACQUISITION CORP.;
CONVACARE SERVICES INC.; SLEEPCAIR,
INC.; SPECTRUM MEDICAL EQUIPMENT
INC.; HEALTHLINK MEDICAL
EQUIPMENT LLC; MMOC, LLC; W&F HIGH
TECH SYSTEMS, LLC; OCT PHARMACY,
LLC; COMPLETE INFUSION SERVICES,
LLC; LINCARE PULMONARY REHAB
SERVICES OF MISSOURI, LLC; LINCARE
OF NEW YORK INC.; VALLEY MEDICAL
CORPORATION; ACRO
PHARMACEUTICAL SERVICES LLC;
AMERICAN HOMEPATIENT, INC.;

LIFE DME LLC;

MED-SOUTH, INC.;

THE MEDICAL SERVICE COMPANY;

MIDWEST RESPIRATORY CARE, INC.;

NATIONWIDE MEDICAL, INC.;

THE SISTERS OF THE THIRD ORDER OF
ST. FRANCIS, PEORIA, ILLINOIS, D/B/A
OSF HEALTHCARE;

PROVIDER PLUS, INC.;

ROTECH HEALTHCARE INC.; ROTECH
HOME MEDICAL CARE INC.; ROTECH
OXYGEN AND MEDICAL EQUIPMENT
INC.;

SLEEPMED, INC.; SLEEPMED CENTER
LLC; SLEEPMED HELP, LLC; SLEEPMED
OF CALIFORNIA, INC.; SLEEPMED
OREGON, LLC; SLEEPMED PHOENIX, LLC;

SLEEPMED SOURCE, LLC; SLEEPMED
THERAPIES, INC.; *and*

TOTAL RESPIRATORY & REHAB, INC.;

      Defendants.

## THIRD AMENDED COMPLAINT
### (False Claims Act)

1.     This is a False Claims Act case.  Defendant Respironics, Inc., has been providing kickbacks, in violation of the Anti-Kickback Statute, to many of its Durable Medical Equipment (DME) customers (collectively, the DME Supplier Defendants).  The DME Supplier Defendants, in turn, knowingly bill Medicare and Medicaid for the expensive equipment they have purchased from Respironics.  The kickback in this case is valuable "HMS data" that the DME Supplier Defendants use to improve their marketing to physicians.  Respironics ███████████ conduct violates the Anti-Kickback Statute and causes the DME Suppliers to violate the False Claims Act.  In 2016, Respironics settled another lawsuit with the Department of Justice, in which Respironics agreed to pay *$34 million* to the federal government to resolve claims that Respironics had been giving kickbacks to DME Suppliers.  As part of that settlement, Respironics also signed a Corporate Integrity Agreement with the Center for Medicare and Medicaid Services (CMS).  In that Corporate Integrity Agreement, Respironics solemnly promised to stop its kickbacks to DME suppliers; moreover, senior Respironics management pledged to sign annual certifications attesting that they and their employees were complying with Anti-Kickback Statute.  In direct contradiction of those obligations, Respironics was engaging in the kickback scheme alleged here *in 2016, at the time of the Corporate Integrity Agreement.*  At least two senior Respironics managers, who are required to sign annual certifications under the Corporate Integrity Agreement, are directly responsible for orchestrating and perpetuating the

kickback scheme described herein. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████  This Third Amended Complaint redacts all

references to information received by the whistleblower after February 12, 2019. [1]  The

whistleblower does *not* concede that this information is privileged or exempt from disclosure.

---

[1] These redactions were first made in the Second Amended Complaint.  *See* Entry Number 8 (Ex Parte).

# TABLE OF CONTENTS

JURISDICTION AND VENUE.................................................................................9

THE KICKBACK...............................................................................................10

THE PARTIES...................................................................................................11

    I.     Relator.................................................................................................11

    II.    Plaintiff United States Of America.................................................13

    III.   State Plaintiffs..................................................................................14

    IV.   The Manufacturer Named as Defendant: Respironics, Inc. .............16

    V.    The DME Supplier Defendants..........................................................16

STATUTORY AND REGULATORY BACKGROUND ...................................25

    I.     The Federal Health Care Program Anti-Kickback Statute.............25

    II.    The False Claims Act ........................................................................26

    III.   AKS Compliance as a Condition of Payment...................................27

THE PARTICULAR RESPIRONICS PRODUCTS AT ISSUE.......................28

    I.     Respironics's CPAP Machines.........................................................29

    II.    Respironics's BiPAP Machines.........................................................30

    III.   Respironics's Ventilator Machines..................................................30

THE FRAUDULENT SCHEME ........................................................................36

    I.     Overview ...........................................................................................36

    II.    The HMS Data...................................................................................37

    III.   Respironics's Kickback Scheme .......................................................39

    IV.   July 2017: VGM Warns Respironics that Sharing the HMS Data
           Violates Respironics's Contract......................................................41

    V.    Respironics Continues to Give HMS Data to DME Suppliers.........41

    ███████████████████████████████████████████████
    ████████████████████████████████████████████43

**THE PRIOR CORPORATE INTEGRITY AGREEMENT (CIA)** ........................................46

    **I.**     **Respironics Employees Falsely Certified Their Compliance with the AKS** ...........................................................................................................47

    **II.**     **Respironics Failed to Report the "Reportable Events" Alleged Herein** ....................................................................................................................48

    **III.**     **Respironics and the DME Suppliers Falsely Certified Their Compliance with the AKS In Their "Sleep and Home Respiratory Purchase Agreements"** ..............................................................................48

    **IV.**     **The Kickback Scheme Violated Respironics' Own Guidance to Its Employees In Its "Medicare Fraud and Abuse Guide"** ...................................49

**THE PARTICULAR FALSE CLAIMS** ...........................................................................50

**CLAIMS FOR RELIEF** .....................................................................................................50

**APPENDIX A: AT-ISSUE PRODUCTS** ..........................................................................62

**JURISDICTION AND VENUE**

2.      All Counts of this Complaint are civil actions by Relator, acting on behalf of and in the name of the United States and the state plaintiffs, against Defendants under the federal False Claims Act, 31 U.S.C. §§ 3729-3733, and analogous state false claims laws.

3.      This Court has jurisdiction over the claims brought on behalf of the United States pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a).

4.      This Court has jurisdiction over the state law claims alleged herein under 31 U.S.C. § 3732(b). In addition, the Court has supplemental jurisdiction over the claims brought on behalf of the state plaintiffs under 28 U.S.C. § 1367.

5.      The False Claims Act provides that an action under 31 U.S.C. § 3730 may be brought "in any judicial district in which . . . any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). Respironics transacts business in this judicial district by, among other things, shipping equipment to DME suppliers who in turn sell or lease that equipment to customers residing in this judicial district.   Finally, this District previously adjudicated a very similar case brought against Respironics by the Department of Justice, alleging violations of the Anti-Kickback Statute and the False Claims Act.  *United States et al. ex rel. Dr. Gibran Ameer v. Philips Electronics North America, et al.*, Case No. 2:14-cv-2077-PMD (D.S.C.).

6.      Accordingly, this Court has personal jurisdiction over the Defendants, and venue is appropriate in this district.  31 U.S.C. § 3732(a). Venue is also proper under 28 U.S.C. § 1391.

7.      None of the allegations set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or General Accounting Office report, hearing, audit or investigation, or from the news media. Relator has direct and independent knowledge of the information on which the

allegations set forth in this Complaint are based. Moreover, prior to filing this lawsuit and prior to any public disclosures regarding this matter, Relators voluntarily provided the information set forth herein to agents of the United States Department of Justice. Immediately after this Second Amended Complaint is filed, Relator will effect service of it on the state plaintiffs in accordance with the rules of each plaintiff.

8.      None of the allegations or transactions set forth in this Complaint is substantially the same as allegations or transactions that have been publicly disclosed in a Federal criminal, civil or administrative hearing in which the Government or its agent is a party, or in a congressional, administrative or Government Accountability Office, or other Federal report, hearing, audit or investigation, or from the news media.

## THE KICKBACK

9.      This is a kickback case. The kickback is "Hospital Management Systems" (HMS) data, which Respironics purchases from third parties. The data shows, in incredible detail, the prescribing decisions of doctors across the country. As relevant here, the data indicates the recent prescriptions written by specific, named doctors, who are organized into geographic areas. This prescription data shows which DME suppliers are filling the orders prescribed by each doctor. The prescribing data is further separated into the kind of product being described. The data shows each doctor's prescriptions of CPAP, BiPAP, and ventilator machines, and shows which DME suppliers filled those prescriptions.

10.     In the hands of DME suppliers, the data is extremely valuable, because it allows each supplier to more effectively market itself and its services to the physicians in their region who are most likely to send them business. If the DME suppliers had purchased this data themselves, from the third-party vendors, it would have cost each DME supplier up to $160,000 per year to obtain (depending on the number of geographic regions, and the number of product

types, purchased). Instead, the DME Supplier Defendants received this valuable data from Respironics, for free, as an inducement to recommend the purchasing and ordering of Respironics' products.

## THE PARTIES

I.   **Relator**

11.   Relator Respiratory Care, LLC, is a Delaware Limited Liability Company. Respiratory Care's sole member is the whistleblower—an employee of Respironics, Inc., who has extensive personal knowledge of the kickback scheme disclosed herein.

12.   The whistleblower has been employed by Respironics since at least 2016, in a position of significant responsibility. He was a successful employee, recognized in 2018 as a "Top Service Performer," and awarded a regional star award and a "Pinnacle trip." REL00573.

13.   When the whistleblower joined Respironics in 2016, he was already familiar with the Anti-Kickback Statute from training he had received in his earlier jobs in the healthcare industry.

14.   After joining Respironics, the whistleblower was told about HMS data. Once the whistleblower learned how valuable the HMS data was, he realized that giving the data away was an inducement to the DME suppliers and therefore a violation of the AKS.



████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████
████████████████████████████████████
███████████████

## II.    Plaintiff United States Of America

22.    Relator brings this action on behalf of the United States pursuant to the qui tam provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*

23.    On behalf of the United States, Relator seeks recovery for damages to federally-funded health insurance programs, including, but not limited to, the federal-state Medicaid drug benefit program, established under Title XIX of the Social Security Act, 42 U.S.C. §1396 *et seq.*, and state laws; the Medicare Part B program; the Federal Employees Health Benefits Plan ("FEHBP"), established under Chapter 89 of Title 5 of the U.S. Code, 5 U.S.C. §§ 8901 through 8914; and the U.S. Department of Defense TRICARE and CHAMPUS health care programs, established pursuant to 10 U.S.C. § 1071 *et seq.*

24.    The Centers for Medicare and Medicaid Services ("CMS") of the U.S. Department of Health & Human Services ("HHS") funds and oversees the joint federal-state funded Medicaid Program for the financially needy. The state plaintiffs participate in the Medicaid program, under which they pay for durable medical equipment (DME) in certain circumstances and for certain indigent individuals who are beneficiaries of such programs. Reimbursement for DME covered by a state Medicaid program is made by each state's Medicaid

program agency, which, in turn, seeks reimbursement for a portion of its expenditures from the federal government.

25.     CMS funds and oversees the Medicare Part B program, which covers a portion of durable medical equipment (DME) for eligible individuals.  CMS funds and oversees this program through contracts with Durable Medical Equipment Administrative Contractors ("DMACs").  The DMACs administer the Medicare Durable Medical Equipment for Medicare Part B.  The DMACs evaluate and process claims for payment from the DME Supplier Defendants, and issue the payments.  (The DMACs are then separately reimbursed by CMS.) The DMACs have authority to conduct audits and issue binding guidance regarding what documentation is required in order to submit a claim for reimbursement.  Some of the DMACs' guidance is in the form of Local Coverage Determinations ("LCDs").  Making a false claim to a DMAC is equivalent, for purposes of the FCA, to making the false statement directly to CMS.

26.     The U.S. Office of Personnel Management ("OPM") funds and oversees the FEHBP, which covers a portion of DME expenditures incurred by federal government employees, retirees, and their families.

27.     The U.S. Department of Defense ("DOD") funds and oversees the CHAMPUS and TRICARE programs, which cover a portion of DME expenditures incurred by civilian DOD employees, retirees, and their families.

III.    **State Plaintiffs**

28.     Relator brings this action on behalf of the states of Alaska, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Washington ("the state plaintiffs").  Relator brings this action under the *qui tam*

provisions of the following false claims laws of the state plaintiffs: Alaska Stat. Ann. § 09.58.010 *et seq.*; California False Claims Law, Cal. Gov. Code § 12650 *et seq.*; California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871 *et seq.*; Colorado Medicaid False Claims Act, Col. Rev. Stat. 25.5-4-303.5 through 25.5-4-310; Connecticut Gen. Stat. § 4-274 *et seq*; the District of Columbia's False Claims Act, D.C. CODE §§ 2-381.01 *et seq.*; the Delaware False Claims and Reporting Act, 6 Del. C. § 1201 *et seq.*; Florida False Claims Act, Fla. Stat. §§ 68.081-68.09; Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168, *et seq.*; Hawaii False Claims Law, HRS § 661-21 *et seq.*; Illinois Whistleblower Reward & Protection Act, 740 ILCS 175/1 *et seq.*; Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*; Indiana False Claims & Whistleblower Protection Law, Ind. Code § 5-11-5.5.-1 *et seq.*; Iowa False Claims Act, Iowa Code § 685.1 *et seq.*; Louisiana Qui Tam Action Act, La. R.S. 46:438.1 *et seq.*; Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*; Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, § 5A, *et seq.*; Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.601, *et seq.*; Minnesota False Claims Act, Minn.Stat. § 15C.01 *et seq.*; Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*; Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. Ann. § 357.010 *et seq.*; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1; New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*; New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*; North Carolina False Claims Act, N.C. Gen. Stat. Ann. § 1-605 *et seq.*; Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. tit. 63, § 5053.1 *et seq.*; Rhode Island False Claims Act, R.I. Gen. Laws Ann. § 9-1.1-1 *et seq.*; Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*; Texas False Claims Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*; Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*;

Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*; and the Washington Health Care False Claim Act, Wash. Rev. Code Ann. § 48.80.010 *et seq.* On behalf of the state plaintiffs, Relators seek recovery for damages caused by the submission of false claims to state-funded health insurance programs, including but not limited to: i) the federal-state Medicaid programs that are jointly funded by the United States and the state plaintiffs; and ii) other state health insurance programs that cover some or all of the costs of suppliers sold by Respironics to the DME Supplier Defendants during the kickback scheme. Under the California Insurance Frauds Prevent Act and Illinois Insurance Claims Fraud Prevention Act, Relators seek recovery for damages caused by the submission of false claims to private insurers.

**IV.    The Manufacturer Named as Defendant: Respironics, Inc.**

29.    Respironics, Inc. is one of the nation's largest manufacturers of home respiratory equipment including certain durable medical equipment (DME), including oxygen tanks and ventilators (which include CPAP, BiPAP, and Non-Invasive Ventilation ("NIV") machines). Respironics is headquartered in Murrysville, Pennsylvania. Respironics is a subsidiary of Koninklijke Philips N.V. (Royal Philips), which is headquartered in Amsterdam, the Netherlands.

30.    In March 2016, Respironics agreed to pay $34 million to the federal government to settle False Claims Act and Anti-Kickback Statute claims brought by the U.S. Department of Justice. Those claims were based on Respironics's practice of providing free call center services (the kickback) to various DME suppliers.

31.    In connection with that settlement, Respironics executed a Corporate Integrity Agreement with CMS's Office of the Inspector General.

**V.    The DME Supplier Defendants**

32.    *Advocate Health Care.* Advocate Aurora Health, Inc. (a Delaware corporation), and Advocate Health Care Network, Advocate Health Partners, and Advocate Health and

Hospitals Corporation (which are affiliated Illinois corporations), are headquartered, on information and belief, at 3075 Highland Parkway Suite 600, Downers Grove, IL, 60515, where they can be served with process. They are referred to herein collectively as Advocate Health Care.

33. According to the company's website, Advocate Health Care provides DME to patients from numerous facilities located in Illinois.

34. Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Advocate Health Care, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant. Respironics has received annual revenues from those sales of approximately $400,000 per year.

35. Like Respironics, Advocate Health Care is currently under a Corporate Integrity Agreement (CIA) with the HHS OIG.

36. *AeroCare*. Defendants Aerocare Holdings, Inc.; Aerocare, Inc.; Aerocare Home Medical Equipment, Inc.; and Aerocare Home Medical, Inc. are affiliated companies that are each, on information and belief, headquartered at 3325 Bartlett Boulevard, Orlando, FL 32811, at which address they may be served with process. These affiliated companies are referred to herein collectively as Aerocare.

37. According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), Aerocare is licensed to provide DME to patients from branch offices located in Alabama, Colorado, Georgia, Missouri, Mississippi, New Mexico, Oklahoma, Nevada, Texas, and Wyoming.

38.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Aerocare, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.  Respironics has received annual revenues from those sales of approximately $36 million per year.

39.     *At Home Health Equipment*.  At Home Health Equipment, LLC is, on information and belief, headquartered at 4309 W 96th St, Indianapolis, IN 46268-1115.

40.     According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), At Home Health Equipment is licensed to provide DME to patients from branch offices located in Indiana.

41.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to At Home Health Equipment, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.  Respironics has received annual revenues from those sales of approximately $1 million per year.

42.     *Fitzsimmons*.  Fitzsimmons Surgical Supply, Inc., is headquartered, on information and belief, at 8000 186th Street, Tinley Park, Illinois, 60487.

43.     According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), Fitzsimmons is licensed to sell and lease DME to patients from branch offices located in Indiana and Illinois.

44.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Fitzsimmons, while at the same time giving this defendant free access to HMS data, which data was of significant value to

this defendant. Respironics has received annual revenues from those sales of approximately $2 million per year.

45. *Hayat Home*. Hayat Home Medical Equipment Incorporated is a company headquartered, on information and belief, at 3518 W 95th St., Evergreen Park, IL 60805-2105, where it may be served with process. It is referred to herein as Hayat Home.

46. According to the company's website, Hayat Home is licensed to provide DME to patients from branch offices located in Illinois.

47. Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Hayat Home, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant. Respironics has received annual revenues from those sales of approximately $500,000 per year.

48. *Integrated*. Integrated Respiratory Services, Inc.; Integrated Home Care Services, Inc.; Integrated Home Care Services Chicago, Inc.; and Integrated Respiratory Services, Inc., are affiliated companies that are each, on information and belief, headquartered at 191 South Gary Ave, Suite 150 Carol Stream, IL 60188, where they can be served with service of process. These affiliated companies are referred to herein collectively as Integrated.

49. According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), Integrated is licensed to provide DME to patients from branch offices located in Florida, Illinois, Michigan, and Wisconsin.

50. Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Integrated, while at the same time giving this defendant free access to HMS data, which data was of significant value to

this defendant. Respironics has received annual revenues from those sales of approximately $1 million per year.

51.    *Lincare*. Lincare Holdings Inc., and its subsidiaries named as Defendants herein,[2] are headquartered, on information and belief, at 19387 U.S. 19 North, Clearwater, FL 33764, where they can be served with process. They are referred to collectively herein as Lincare.

52.    According to Lincare's website, the company provides DME to patients in every state in the United States.

53.    Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Lincare, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant. Respironics has received annual revenues from those sales of many tens of millions of dollars per year.

54.    *Life DME*. Life DME LLC is, on information and belief, headquartered at 8896 Louisiana St., Merrillville, IN 46410-7153, where it can be served with service of process.

55.    According to the company's website, Life DME provides DME to patients in Indiana.

56.    Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Life DME, while at the

---

[2] Alpha Respiratory Inc.; Gamma Acquisition Inc.; Health Care Solutions at Home Inc.; HomeCare Equipment Network Inc.; Lincare Inc.; Lincare Licensing Inc.; Lincare Pharmacy Services Inc.; Lincare Procurement Inc.; Med 4 Home Inc.; Lincare of Canada Acquisition Inc.; Caring Responders LLC; HCS Lancaster LLC; Lincare Equipment LLC; Lincare Leasing LLC; mdINR, LLC; Medimatics LLC; PulmoRehab LLC; Lincare Pulmonary Rehab Management, LLC; Community Pharmacy Services, LLC; Acro Healthcare, LLC; Lincare Online LLC; Lincare Pulmonary Rehab Services of Florida, P.L.; Optigen, Inc.; MRB Acquisition Corp.; ConvaCare Services Inc.; Sleepcair, Inc.; Spectrum Medical Equipment Inc.; Healthlink Medical Equipment LLC; MMOC, LLC; W&F High Tech Systems, LLC; OCT Pharmacy, LLC; Complete Infusion Services, LLC; Lincare Pulmonary Rehab Services of Missouri, LLC; Lincare of New York Inc.; Valley Medical Corporation; Acro Pharmaceutical Services LLC; and American HomePatient, Inc..

same time giving this defendant free access to HMS data, which data was of significant value to this defendant. Respironics has received annual revenues from those sales of approximately $750,000 per year.

57.     *Med-South*. Med-South, Inc., is an Alabama corporation that is headquartered, on information and belief, at 2316 1st Avenue South, Suite 100, Birmingham, AL 35233, where it can be served with process.

58.     According to the company's website, Med-South provides DME to patients at offices located throughout Alabama.

59.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Med-South, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant. Respironics has received annual revenues from those sales of approximately $2 million to $3 million per year.

60.     *Medical Service Company*. The Medical Service Company is an Ohio corporation that, on information and belief, is headquartered at 24000 Broadway Ave., Cleveland OH 44146, where it can be served with service of process.

61.     According to the company's website, Medical Service Company sells and leases DME to patients from branch offices located in Indiana, Kentucky, Michigan, New York, Ohio, and Pennsylvania.

62.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Medical Service Company, while at the same time giving this defendant free access to HMS data, which data was of

significant value to this defendant. Respironics has received annual revenues from those sales of approximately $3 million per year.

63.    *Midwest Respiratory and Rehab*.  Midwest Respiratory Care, Inc., is a Nebraska corporation doing business as Midwest Respiratory and Rehab.   It is headquartered, on information and belief, at 2310 Avenue L, Ft. Madison, IA 52627, where it can be served with process.

64.    According to the company's website, Midwest provides DME to patients from offices located in Iowa, Kansas, Minnesota, Missouri, and Nebraska.

65.    Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Midwest, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.

66.    *Nationwide Medical*.  Nationwide Medical, Inc., is a Nevada corporation that is headquartered, on information and belief, at 29903 Agoura Rd, Suite 120, Agoura Hills, CA 91301.

67.    According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), Nationwide Medical is licensed to provide DME to patients from branch offices located in Alabama, California, Colorado, Florida, Louisiana, Oregon, Pennsylvania, Tennessee, and Texas.

68.    Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Nationwide Medical, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.

69.     *OSF Healthcare*.  OSF Healthcare is the name of a system of facilities owned and operated by The Sisters of the Third Order of St. Francis, Peoria, Illinois.  On information and belief, The Sisters of the Third Order of St. Francis is a privately held company headquartered in East Peoria, Illinois.

70.     According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), OSF Healthcare is licensed to sell and lease DME to patients from branch offices located in Illinois.

71.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to OSF Healthcare, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.  Respironics has received annual revenues from those sales of approximately $2.5 million per year.

72.     *Provider Plus*.  Provider Plus, Inc., is a Missouri corporation headquartered, on information and belief, at 7748 Watson Road, St. Louis, MO 63119, where it can be served with process.

73.     According to the company's website, Provider Plus provides DME to patients at ten offices located in Illinois, Kansas, and Missouri.

74.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Provider Plus, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.

75.     *Rotech*. Defendants Rotech Healthcare Inc., Rotech Home Medical Care Inc., and Rotech Oxygen and Medical Equipment Inc., are affiliated companies that are each, on

information and belief, headquartered at 3600 Vineland Road, Suite 114, Orlando, FL 32811. These affiliated companies are referred to herein collectively as Rotech.

76.     According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), Rotech is licensed to sell and lease DME to patients from branch offices located in Florida, Virginia, and West Virginia.

77.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to Rotech, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant. Respironics has received annual revenues from those sales of approximately $70 million per year.

78.     Like Respironics, Rotech is currently subject to a Corporate Integrity Agreement (CIA) with HHS OIG.

79.     *SleepMed.* SleepMed, Inc., SleepMed Center LLC, SleepMed Help, LLC, SleepMed of California, Inc., SleepMed Oregon, LLC, SleepMed Phoenix, LLC, SleepMed Source, LLC, and SleepMed Therapies, Inc., are affiliated companies that are each headquartered, on information and belief, at 1641 Worthington Rd, Suite 430 West Palm Beach, FL 33409. These affiliated companies are referred to herein collectively as SleepMed. Earlier this year, SleepMed was acquired by AdaptHealth, LLC.

80.     According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), SleepMed is licensed to sell and lease DME to patients from branch offices located in Arizona, Connecticut, Florida, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Nevada, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Virginia, and Wisconsin.

81.     Between January 1, 2016 and the present (i.e., the duration of the kickback scheme alleged herein), Respironics has sold the At-Issue Products to SleepMed, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.  Respironics has received annual revenues from those sales of at least $1 million per year.

82.     *Total Respiratory & Rehab*.  Total Respiratory & Rehab, Inc., is a Nebraska corporation that, on information and belief, is headquartered at 5950 South 118th Circle, Omaha, NE, 68137, where it can be served with process.

83.     According to the federal government's Registry of National Provider Identifiers ("NPI Registry"), Total Respiratory & Rehab is licensed to provide DME to patients from branch offices located in Iowa, Missouri, and Nebraska.

84.     During the kickback scheme described herein, Respironics has sold the At-Issue Products to Total Respiratory & Rehab, while at the same time giving this defendant free access to HMS data, which data was of significant value to this defendant.

## STATUTORY AND REGULATORY BACKGROUND

**I.     The Federal Health Care Program Anti-Kickback Statute**

85.     The Federal Health Care Program Anti-Kickback Statute ("AKS"), enacted as Section 1128B(b) of the Social Security Act, 42 U.S.C. § 1320a-7b(b), prohibits persons from offering, paying, soliciting, or receiving illegal remunerations "in return for . . . arranging for or recommending purchasing, leasing or ordering any good . . . or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1)(B) and (2)(B). The types of illegal remuneration covered specifically include kickbacks, rebates, and bribes, whether paid directly or indirectly, overtly or covertly, in cash or in kind. 42 U.S.C. § 1320a-7b(b)(1) and (2). The terms "good" and "item" as used in the statute include the At-Issue

Products. Several of the state plaintiffs have analogous anti-kickback statutes. See, e.g., Fla. Stat., Ch. 409.920(2)(e).

86. Federal regulations, codified at 42 C.F.R. 1001.952, identify certain narrowly defined financial transactions known as "safe harbors" that do not come within the prohibitions of the AKS. Persons or entities relying on the safe harbor exceptions to avoid liability under the AKS have the burden of affirmatively proving their strict compliance with all conditions set forth in the statutory exceptions. None of the "safe harbors" covers the violations of the AKS described in this Complaint.

87. The AKS covers any arrangement in which one purpose of the remuneration is to induce another to recommend or arrange for the purchasing, leasing or ordering of goods or items that will be paid for by a federal health program, even if other motivations are also present.

## II.    The False Claims Act

88. The federal False Claims Act provides:

[A]ny person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; …

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government . . . .

31 U.S.C. § 3729 (a)(1).

89. The AKS covers any arrangement in which one purpose of the remuneration is to induce another to recommend or arrange for the purchasing, leasing or ordering of goods or

items that will be paid for by a federal health program, even if other motivations are also present. The DME suppliers are and were required to submit claims for reimbursement using the CMS-1500 form (for any claims submitted by paper to CMS) or the 837 form (for claims submitted electronically). The current version of the CMS-1500 form has been in use since at least February 2016. By signing the form, or using its electronic equivalent, the DME suppliers certified each and every claim for reimbursement for At-Issue Products "complies with all applicable Medicare and/or Medicaid laws . . . including but not limited to the Federal anti-kickback statute." That was a false certification because the DME supplier defendants knew that they had received kickbacks from Respironics intended to induce them to recommend to physicians and patients that the physicians and patients order the At-Issue Products. This false certification rendered each of these claims false.

## III.    AKS Compliance as a Condition of Payment

90.     Since 2010, any "claim that includes items or services resulting from a violation" of the AKS "constitutes a false or fraudulent claim for purposes of [the civil False Claims Act]." 42 U.S.C. § 1320a-7b (g).

91.     Compliance with the Anti-Kickback Statute is a condition of payment by federal programs such as Medicare, Medicaid, FEHBP, TRICARE or CHAMPUS. Violation of the statute can subject the perpetrator to exclusion from participation in federal health care programs and to civil monetary penalties. 42 U.S.C. § 1320a-7a(a); § 1320a-7b(g). Violations of the Anti-Kickback Statute can also form the basis for a claim under the False Claims Act. 42 U.S.C. § 1320a-7b(g). Compliance with the AKS is a necessary condition to the right of all health care providers, including DME suppliers, to receive or retain payments from the Medicare, Medicaid, CHAMPUS, or TRICARE programs.

92.     The U.S. Department of Defense regulations for the CHAMPUS program provide that: "Providers seeking payment from the Federal Government through programs such as CHAMPUS have a duty to familiarize themselves with, and comply with, the program requirements." 32 C.F.R. §199.1(a)(4) (emphasis added). Those program requirements, in turn, provide for mandatory suspension or exclusion from CHAMPUS for those found liable for civil fraud against CHAMPUS, or convicted of criminal fraud against any federal health care program; they expressly state that fraud includes: "[a]rrangements by providers with employees, independent contractors, suppliers, or others which appear to be designed primarily to overcharge the CHAMPUS through various means (such as commissions, fee-splitting, and kickbacks) used to divert or conceal improper or unnecessary costs or profits." 32 C.F.R. §199.1(c)(12) and (i)(B) and (D) (emphasis added). Per 32 CFR 199.17(r), all fraud, abuse, and conflict of interest requirements for the basic CHAMPUS program, as set forth in Part 199, are applicable to the TRICARE program.

93.     Compliance with the federal AKS and the state AKS's is material to the governments' decision to pay the claims for reimbursement.  Therefore, any claim for reimbursement for a product or service "resulting from a violation" of the AKS is a false claim for purposes of the federal and state false claims acts.  42 U.S.C. § 1320a-7b (g); United States v. Berkeley Heartlab, Inc., No. CV 9:14-230-RMG, 2017 WL 6015574, at *2 (D.S.C. Dec. 4, 2017) (instructing jury as a matter of law that "AKS compliance is material to payment decisions in all cases").

## THE PARTICULAR RESPIRONICS PRODUCTS AT ISSUE

94.     Respironics manufactures and sells one hundred eleven products at issue in this action, which are referred to throughout this Complaint as the "At-Issue Products."  The kickbacks in this case were intended by Respironics to induce DME Suppliers to recommend that

doctors and patients order the At-Issue Products, instead of ordering competing products manufactured by one of Respironics' competitors. Appendix A to this complaint is a list of all the particular At-Issue Products, together with their Respironics Item Numbers, descriptions, HCPCS codes, and manufacturers' standard retail price (MSRP).

95.     All of the At-Issue products are machines that deliver air to the patient, typically through a hose connected to a mask that is, in turn, fitted to the patient's face and held in place by straps around the patient's head. These machines have different names, and different prices, depending on the kind of therapy the machine delivers, along with other features and accessories.

96.     Respironics does not enjoy a monopoly in any of its product markets. Instead, each of Respironics's At-Issue Products competes fiercely with similar, rival products manufactured by Respironics's competitors. For example, Respironics's DreamStation ventilator is a direct competitor to ResMed's AirSense 10 Elite and to Drive's DeVilbiss IntelliPAP.

## I.     Respironics's CPAP Machines

97.     *DreamStation CPAP.* Respironics's current CPAP machine is named the DreamStation CPAP. A CPAP machine delivers constant air pressure to the patient through a tube and face mask. The CPAP is typically prescribed to treat sleep apnea along with other kinds of sleep disordered breathing. The DreamStation CPAP exists in various item numbers. As shown in Appendix A, the item numbers differ based on the combination of various accessories and features (e.g., cell modem, heated tubing, humidifier). Respironics' most basic CPAP machine is sold for as low as $225, while its more advanced models are sold for as much as $4,275.

98.     *DreamStation Go.* Respironics sells a portable, travel version of the DreamStation CPAP, called DreamStation Go.

99. *REMStar CPAP.* Before the DreamStation CPAP was introduced, Respironics's flagship CPAP machine was the REMStar. The REMStar continued to be sold throughout the duration of the kickback scheme alleged here. The REMStar exists in twelve different item numbers, which retail for between $225 and $1,541.38. As shown in Appendix A, the item numbers differ based on the combination of various accessories that can be ordered along with it (e.g., cell modem, heated tubing, humidifier).

## II. Respironics's BiPAP Machines

100. ***DreamStation BiPAP Machines.*** Respironics's current BiPAP machine is named the DreamStation BiPAP. A BiPAP machine delivers two different air pressures to the patient through a tube and face mask—one pressure for inhalation, the other for exhalation. A BiPAP is typically prescribed for various kinds of sleep disordered breathing, including a low baseline O2 saturation, Cheyne-Stokes breathing, and central sleep apnea, especially for patients who require a high inhalation pressure but cannot tolerate a similarly high exhalation pressure. Some of Respironics' BiPAP machines offer additional modes of therapy known as AVAPS and S/T. The DreamStation BiPAP exists in various different item numbers. Respironics' most basic BiPAP machine is sold for as low as $550, while its more advanced models are sold for as much as $7,770.83. As shown in Appendix A, the item numbers differ based on the combination of available features and modes, and the various accessories that can be ordered along with it (e.g., cell modem, heated tubing, humidifier).

101. ***Other BiPAP Machines.*** Before the DreamStation BiPAPs were introduced, Respironics' primary BiPAP machines were the BiPAP S/T C Series and the BiPAP AVAPS C Series and the BiPAP autoSV and Auto BiFlex, System One. These machines continued to be sold throughout the duration of the kickback scheme alleged here.

## III. Respironics's Ventilator Machines

102.    Respironics' ventilators carry the name Trilogy; these are the most expensive machines among the At-Issue Products.  Ventilators breathe for the patient, that is, push air into the patients' lungs.  Ventilators are typically prescribed for patients with particularly severe conditions that inhibit breathing, such as severe chronic obstructive pulmonary disease (COPD) and certain neuromuscular disorders.  Ventilators are expensive machines. Respironics sells them to DME suppliers for between $6,000 and up, depending on the features of the machine.

## THE KEY ROLE OF DME SUPPLIERS IN DISTRIBUTING RESPIRONICS'S AT-ISSUE PRODUCTS

103.    The vast majority of Respironics's sales of At-Issue Products are made to DME suppliers, rather than directly being sold to doctors or patients.  These DME suppliers play a key role in getting these products from Respironics's warehouses, and into the hands of the patients whose doctors have prescribed therapy requiring products like these.

104.    DME suppliers' key role enables them to do three different things at once: (a) DME suppliers *recommend*, to doctors and patients, which manufacturer's products to order; (b) after a doctor prescribes a therapy, DME suppliers then *deliver* the relevant products to patients—a task that typically involves teaching the patients, in person, how to use the devices; and (c) DME suppliers then *follow up* with patients at regular intervals, sometimes in perpetuity, in order to ensure that the products are working and that the patients are complying with the therapy prescribed for them; as part of this follow-up role DME suppliers often send reports back to doctors about how the patients are doing on the therapy.

105.    DME suppliers pride themselves (and market themselves) as being healthcare professionals, i.e., clinicians, and not merely distributors of goods.  The DME suppliers' patient-facing employees are usually titled "Respiratory Therapists," which title is intended to indicate their clinical role in treating the patients.  DME suppliers claim that they are a direct link

between doctor and patient and to serve a clinical role in ensuring that patients receive the care they need.  In short, DME suppliers market themselves (to doctors and to patients) as being an extension of the doctor's office, ensuring that the patient receives the appropriate care.  Each of the DME Supplier Defendants uses this marketing pitch, claiming to be a clinical provider of healthcare services to patients and a trusted clinical "partner" with the patients' doctors:

a. *Advocate* claims that it will "provide [patients] with the equipment, education and resources" they need in order to "ensure treatment is comfortable and easy to use so you can get the sleep your body needs."  Advocate also promises "thorough follow-up care within 48 hours after your initial training as well as 30, 60, and 90 days after your training."  Advocate's stated goal is to "support" the patient with "any questions or problems" and to "help [patients] adjust to PAP therapy and use it consistently and correctly to reap the most health and wellness benefits."

b. *Aerocare* claims that its "representatives in the community are the link between the AeroCare office and the physicians' office," and that its Respiratory Therapists "help[] create a continuum of care that benefits the total care of the patient."

c. *At Home Health Equipment* claims that its customers "want more than a place to get . . equipment."  At Home Health therefore claims to offer "Respiratory Therapists to help with all CPAP needs," and to provide "Compliance reports for users, doctors, and insurance companies."

d. *Fitzsimmons* claims to be "dedicated to providing . . . exceptional clinical services to patients in their home," and to "provide the highest quality health care services for our patients.  Every patient is provided a copy of the Patient Bill of

Rights . . . ." Fitzsimmons claims that its "first responsibility is to the patient and to the quality of care that is ultimately received." Fitzsimmons markets its "mission" as being to "responsibly provide quality health care products and services to the medical community, which is comprised of physicians, hospitals . . . and ultimately and most importantly, the patient."

e. *Hayat Home* boasts that its "Sleep Patient Coordinators will work with you and your referral source [i.e., your doctor]." Hayat claims that its "Respiratory Therapist will meet with you to set-up the CPAP machine . . . . and provide you with a plan ensuring compliance in order for the patient to understand the value of the therapy." Hayat pledges that a Respiratory Therapist will 'contact you within 72 hours of set-up" and thereafter "will be monitoring your first 90 days to ensure that the target is met so that you can continue your CPAP journey in ensuring the best quality of life."

f. *Integrated* claims that its "sleep division" provides patients and their doctors with "care plan focused on continued therapy compliance, and overseen by remote compliance sleep technology." Integrated's "set-ups are completed by a licensed Respiratory Therapist that takes ownership in delivering the best quality care possible." "Patient compliance is continued long term by contacting every patient every three months and keeping the physicians updated on the status of the patient." For patients requiring more intensive therapy (i.e., ventilators rather than CPAPs), Integrated offers even more intensive "clinical services" in its "Specialty Respiratory" program, in order to "help treat and manage patients with Chronic Respiratory Failure" and other diseases. Through this program,

Integrated claims to "utilize[] advanced disease management programs" that "appl[y] detailed care plan logics and protocols to manage, support, and oversee the chronic/complex patient," all of which, according to Integrated, "significantly improves respiratory health, health outcomes, and events of hospital readmissions." Integrated's specialty program "collects and tabulates all patient data and information on an ongoing basis" and provides it to doctors "per patient."

g. *Lincare* claims that is "mission" is to "transform[] the way respiratory care is delivered in the home," and to "enable patients with chronic conditions to remain engaged in life, with the peace of mind that we are caring for them." Lincare tells doctors and patients that Lincare "want[s] to be a partner in your care." Lincare boasts that its "professionally-trained staff helps patients maximize compliance through careful instruction and follow-up monitoring." For patients requiring more intensive therapy (i.e., ventilators rather than CPAPs) Lincare offers "the Lincare Home Ventilator Program," which "provid[es] clinical support for patients and educational assistance for caregivers."

h. *Life DME* claims that its "respiratory therapist and delivery technician will ensure a thorough education of the equipment and will follow-up to ensure satisfaction with the equipment and compliance." Life DME markets its "strength" as being "not in our equipment, but the experience and know-how of the team that comes with that equipment." The "Life DME Promise" is to "work with patients to ensure compliance."

i. *Med-South* claims to "employ experienced, certified Respiratory Therapists (RTs) skilled in providing quality clinical care to our patients that suffer from respiratory diseases. Our RTs provide patients with regular therapy assessment and remote-monitoring for enrolled patients. We provide patient-centered care . . . ."

j. *Medical Service Company* operates a "specialty division" called "MSC Sleep." That division claims to be the patient's "partner in adapting to prescribed therapy." Medical Service Company markets its "licensed Respiratory Therapists" who "are the experts in getting you started by explaining the equipment, fitting you with the best nasal interface and educating you on the best tips for success." The company also boasts of its "Compliance Coordinators" who, "[w]hen we see you're struggling a bit," "reach out to you and talk through your issues, suggest changes and get you back on track."

k. *Midwest Respiratory and Rehab* claims to "reach out to each unique patient, to form a connection of compassion, genuine care and one of a kind understanding. We will never stop from pushing to honor that connection and the caring it delivers to the patients in the communities we serve."

l. *Nationwide Medical* markets its "Clinical Care Department" as "guiding and monitoring your [respiratory] therapy." Nationwide's "clinicians" and "Respiratory Therapists" will "assist" patients with "anything related to your therapy." Nationwide has even "developed an adherence program to ensure you, the patient, the best therapy possible. We offer personal therapist support specialists to walk you through your first 90 days of compliance." Nationwide

also communicates with the prescribing physician: "By establishing good communication with your physician, we can process all needs for your therapy in a timely manner."

m.  *OSF Healthcare* markets its Cardiopulmonary Department as "perform[ing] a wide range of therapeutic and diagnostic testing including" "COPD education." OSF claims that its "Respiratory Therapists are equipped to treat patients of all ages who require respiratory interventions."

n.  *Provider Plus* markets itself as having "[c]ertified respiratory therapists on our staff" who "are available 24 hours a day, 7 days a week."

o.  *SleepMed* advertises its "Integrated Sleep Solutions" as offering "an integrated care plan from diagnosis through treatment to reach the optimal outcome for each and every patient. We offer a full diagnostic (HST and Lab) together with DME solutions to streamline the patient experience, remove obstacles and deliver a superior care program." SleepMed further claims that its "therapy options are the very best - offering patients and physicians a complete range of PAP therapies (from the best manufacturers only); a national network of therapists and support . . . ."

p.  *Total Respiratory & Rehab* promises patients that its "trained and experienced consultants will help you find the right solution for managing your condition" and further promises to "offer educational information designed to help you come to a better understanding of your condition and its methods of treatment."

## THE FRAUDULENT SCHEME

I.  **Overview**

106.     Beginning in or about February 1, 2016 and continuing through the current time, Respironics has employed a scheme to increase sales and rentals of the At-Issue Products by corrupting the independent judgment of the DME Supplier Defendants.    The essence of the scheme was this:   Respironics purchased, at significant cost to itself, valuable data on the prescribing decisions of physicians throughout the United States.  Respironics then gave this data to the DME suppliers.  Respironics knew that the data was of incredible value to the DME suppliers, who could use the data to identify physicians in their area to target for sales. Respironics's purpose, when giving the data to the DME Suppliers, was to induce the DME Suppliers to recommend Respironics' At-Issue products to patients and physicians—and the DME Suppliers knew that this was Respironics' purpose.

## II.     The HMS Data

107.     "Hospital Management Systems" (HMS) data is compiled by LexisNexis from a variety of hospitals and other sources across the United States.  This data shows, in incredible detail, the prescribing decisions of doctors across the country.   As relevant here, the data indicates the prescriptions written recently by specific, named doctors, who are organized into geographic areas.  This prescription data shows which DME suppliers are filling the orders prescribed by each doctor.  The prescribing data is further separated into the kind of product being described.  The data shows each doctor's prescriptions of CPAP, BiPAP, and ventilator machines, and shows which DME suppliers filled those prescriptions.

108.     LexisNexis sells the data to The VGM Group (VGM).  VGM repackages and sells the data in a format called VGM Market Data.  VGM expressly claims that it targets providers of durable medical equipment (DME), and expressly promises to help those businesses sell more of their products to doctors.

109.    The VGM Market Data is intended to assist, and does assist, DME suppliers to market their services and products to physicians who, in turn, prescribe those services and products to patients.    VGM claims to be "an industry leader in providing referral source targeting . . . to home medical equipment providers."    By "referral source" VGM means the prescribing physician.    According to VGM's online "tutorials" of its product, the VGM Market Data allows DME businesses to (among many other things) obtain information to target their sales efforts.    Specifically, VGM claims that its data will allow DME suppliers to "[i]dentify the top 50 referring product practi[t]ioners in a territory"; to "[i]dentify your top 50 referral sources by volume who send you less than 50 percent of their patients"; and to "[i]dentify your main local competitor's top 20 referral sources."    Because VGM Market Data is so useful in assisting DME suppliers to market their products and services to physicians and thus to increase their sales, the VGM data is of great value to DME suppliers.

110.    VGM offers four different data products in the respiratory category: CPAP/BiPAP; Oxygen; Nebulizers; and Non-Invasive Ventilation.    Respironics purchases all four data products, and provides all four to the DME Supplier Defendants.

111.    VGM Market Data is expensive.    VGM's pricing is per product.    Products can be purchased either for one specific state, or for the entire United States.    For an individual state, VGM sells one product for $7,500 per year.    So purchasing all four products for one state, for one year, would cost $30,000 per year.    For data spanning the entire United States, VGM sells one product for $40,000 per year.    So purchasing all four products, for the United States, would cost $160,000 per year.

112.    Since at least January 2016, Respironics has purchased a subscription for VGM Market Data, and has obtained that data covering all prescribers across the United States who

write prescriptions for CPAPs, BiPAPs, and ventilators. Respironics' employees typically refer to this as "HMS data" rather than by the formal name VGM Market Data.

## III. Respironics's Kickback Scheme

113. Respironics targeted the DME Supplier Defendants beginning at least in February 1, 2016. Respironics's sales representatives offered to give, and gave, the HMS data to the DME Supplier Defendants.

114. Respironics's sale representatives were encouraged and authorized to provide HMS data to the DME Supplier Defendants.

115. Respironics's sales representatives' intention, when offering and giving this HMS data, was to induce the DME Supplier Defendants to recommend to physicians and patients the ordering of Respironics's At-Issue Products.

116. For example, on February 22, 2016, Respironics sales representative Thomas Atkins wrote, in the company's internal SalesForce database, that he "met with" a "sales rep" for DME Supplier Defendant Total Respiratory, and "went over HMS data specifically targeting non-PRI [i.e., non-Respironics] friendly DME accounts that are getting the business." REL0007. This DME supplier was "very appreciative and took away 8-10 solid leads that he can start following up on and try to shift business to them instead of the non PRI companies."

117. On February 23, 2016, Mr. Atkins wrote another Salesforce note, this time related to a different DME Supplier Defendant, Midwest Respiratory Care. Mr. Atkins noted that he "met with" four employees of Midwest and "went over HMS data, we dove into non-PRI friendly accounts and where they get their business." REL00008. Mr. Atkins wrote that Midwest's employees were "very excited to have this info and will be trying to get this business." *Id.* This outreach to Respironics's customer was so successful that Mr. Atkins noted

that he "also sent an email out to the [Respironics sales] group requesting they do the same type of presentation," i.e., share the HMS data with their own DME supplier customers.

118. On October 17, 2016, Gary Hawkins (Regional Sales Director) forwarded an email to his team from Joe King, the "Key Account Executive" for DME Supplier Defendant AeroCare. The email instructed Respironics's sales reps to "distribute the regional HMS data" and "discuss it with their AeroCare location sales reps." REL0013. The purpose was to "plan co-marketing efforts" and to "[i]dentify/qualify potential physician . . . opportunities." The Respironics representatives were told to "log" their "calls" specifically noting "HMS data," so that King (the "Key Account Executive") could report to AeroCare senior management that Respironics was providing this valuable data to them. ("I will need … this to show AeroCare Executive & Regional Management how great we are!"). Mr. King's recommendation to give away the HMS data to Aerocare was a hit with Respironics' leadership: On November 13, 2016, Respironics's Vice President of Sales—Key Accounts, Mr. Eric Paul, included Mr. King's recommendation (to share HMS data with Aerocare) in a slide presentation entitled "Key Account Team—Q4 Field Sales Messaging and Tactics," which Mr. Paul emailed to all "Sales Directors." REL00018 (email); REL000930 (attached presentation).

119. On November 10, 2016, Mr. Hawkins (Regional Sales Director) sent his sales team an email subject "HMS data—A License to Hunt." REL00017. Mr. Hawkins instructed his team to "leverage this information with GOOD customers to move POC [i.e., CPAP, BiPAP, ventilators] share in our direction." As discussed further below, around this same time Mr. Hawkins would have signed an Annual Certification, attesting that to CMS OIG that to the best of his knowledge, Respironics was not providing kickbacks to DME suppliers.

120. Mr. Hawkins encouraged his subordinates to share the HMS data with Respironics's DME supplier customers. When asked in December 2016 whether it was appropriate to share the HMS data, Mr. Hawkins responded "Yes, great idea." REL00028.

121. In January 2017 Mr. Hawkins forwarded to his subordinates the "latest HMS data" for "Region C," and instructed them to "us[e] this data as a foundation" for their sales efforts to DME suppliers. "[W]ork with DME's that we see as TRUE PARTNERS to help grow their business and yours." REL00072.

122. On March 29, 2017, Account Manager George Zych sent an email to many Respironics sales reps encouraging them to "use our lunch budgets and HMS data with progressive DMEs," because these "joint marketing efforts will show significant growth in the long term." REL00083.

## IV. July 2017: VGM Warns Respironics that Sharing the HMS Data Violates Respironics's Contract

123. Long before Respironics had any concerns about *federal law*, Respironics was warned that its practice of giving away HMS data risked trouble from another source: VGM, the data vendor. Matt Wood, a Director of Respironics with responsibility for purchasing the HMS data, sent an email to leaders of the Respironics sales force on July 23, 2017: "HMS has informed me that they were told directly by a customer 'I get the HMS data from Philips [Respironics].' This is a violation of our contract and risks cancellation of access to HMS data. We cannot directly share any HMS data with our customers, which includes: … any type of displaying the workbooks in front of customers." REL00096. "If your customer pressures for direct sharing, you can state that this violates our HMS agreement, and that VGM is the sole reseller to the DME space for HMS data." *Id.*

## V. Respironics Continues to Give HMS Data to DME Suppliers

124.   After the July 2017 warning about violating the VGM contract, Respironics's employees became more cautious about admitting in writing that they were giving away the HMS data to their DME supplier customers.   The whistleblower in this lawsuit has direct personal knowledge that this practice continued as to all the DME Supplier Defendants named here.  But the words used to describe that practice changed.

125.   In 2018, the whistleblower learned that Tod York, Vice President of Sales, provided the data to Alicks Home Medical during an in-person meeting at which the DME supplier was encouraged to write down the information for further use.

126.   Internal notes and emails document Respironics' continued use of HMS data throughout 2018.   For example, one salesforce note in August 2018 titled "HMS Data Discussion" indicates that Respironics sales reps "met with" their contact at Sleepmed and "discussed HMS data over lunch," and then "set targets for" various "opportunities" to sell At-Issue Products.   REL00127.   Another note in the same month indicates that a different representative "discussed HMS data" with Aerocare employees, and "areas where they could forge new opportunities."   REL00128.   In November 2018, a Salesforce noted indicates that a Respironics sales representative met with a Rotech employee to "review HMS data targets," and predicted that the Rotech employee "will use data to target physicians for therapy growth." REL00139.  ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

127. In December 2018, some of Mr. Hawkins's subordinates, including the whistleblower, wrote him to ask his guidance regarding HMS data. Several DME supplier customers had been asking for updated HMS data, but the subordinates told Mr. Hawkins that they were not "comfortable" giving the data, "because we are concerned it may be seen as an inducement", i.e., a kickback. REL00040. Mr. Hawkins instructed the subordinates to go ahead: "we can show the DATA to the customer and let them write down as much as they desire." REL00040, REL00145. Before giving this instruction, Mr. Hawkins conferred with Tod York, Respironics Vice President of Sales, who told Mr. Hawkins to proceed with sending the email, giving this guidance, and distributing the HMS data to DME suppliers.





██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

████████████████████████████

### THE PRIOR CORPORATE INTEGRITY AGREEMENT (CIA)

142.    In March 2016, Respironics settled *another* lawsuit brought by the Department of Justice, alleging that Respironics had provided valuable "call center" services to Respironics's

46

DME supplier customers, which were kickbacks intended to induce the DME suppliers to recommend the purchase of Respironics's products. *United States et al. ex rel. Dr. Gibran Ameer v. Philips Electronics North America, et al.*, Case No. 2:14-cv-2077-PMD (D.S.C.). In connection with that settlement, Respironics also agreed to a Corporate Integrity Agreement (CIA) with CMS's Office of Inspector General (OIG).

**I.      Respironics Employees Falsely Certified Their Compliance with the AKS**

143.    The CIA requires Respironics to submit Annual Reports to OIG. The Annual Reports must contain certificates, signed each year, by Certifying Employees.

144.    Each Certifying Employee is "specifically expected to monitor and oversee activities within his or her areas of authority and shall annually certify that the applicable Respironics department is in compliance with applicable Federal health care program requirements and with the obligations of this CIA."[3]

145.    Each year, each Certifying Employee was required to sign a certification stating: "To the best of my knowledge, the [insert name of department] of Respironics is in compliance with all applicable Federal health care program requirements and the obligations of the Corporate Integrity Agreement. I understand that this certification is being provided to and relied upon by the United States."[4]

146.    The following high-ranking Respironics employees were Certifying Employees who had direct knowledge of the kickback scheme alleged herein:

>   *Mark Capra*
>   *Gary Hawkins*
>   *Scott Pearcy*
>   *Tom Pontzius*
>   *Jackson Register*

---

[3] CIA, at 6.
[4] CIA, at 7.

147.     On information and belief, the foregoing Certifying Employees signed the required certifications, which were provided to and relied on by the United States.

## II.     Respironics Failed to Report the "Reportable Events" Alleged Herein

148.     The CIA requires Respironics to report to OIG any "Reportable Event," defined as "a matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized."[5]  The AKS is such a "criminal … law."

149.     The facts alleged herein meet the definition of a "Reportable Event."

150.     On information and belief, Respironics never reported the facts alleged here to OIG.

## III.     Respironics and the DME Suppliers Falsely Certified Their Compliance with the AKS In Their "Sleep and Home Respiratory Purchase Agreements"

151.     Since at least the time of signing the CIA in 2016, Respironics has signed, and has required each of the DME Supplier Defendants to sign, a "Sleep and Home Respiratory Purchase Agreement," in which each party certifies compliance with the AKS using the following language:

**COMPLIANCE**

1) **Certification of Anti-Kickback Statute Compliance.**  Each Party certifies that it will comply with the Anti-Kickback Statute, set forth at 42 U.S.C. § 1320a-7b(b) ("Anti-Kickback Statute") and related federal or state health care program requirements in the performance of this Agreement.  Each Party further certifies that Philips Respironics has made its Code of Conduct, including its Anti-Kickback Statute policies and procedures, available via the Philips Respironics website at www.philips.com/PRIhealthcarecompliance.

---

[5] CIA, at 18.

152.     Respironics and the DME Supplier Defendants falsely signed the Sleep and Home Respiratory Purchase Agreements while knowing that they were each of them in violation of the Anti-Kickback Statute because Respironics was routinely providing the HMS data to the DME Supplier Defendants as an inducement to encourage the DME Supplier Defendants to recommend the purchasing and ordering of Respironics products.

## IV. The Kickback Scheme Violated Respironics' Own Guidance to Its Employees In Its "Medicare Fraud and Abuse Guide"

153.     Since at least 2016, the link in the Sleep and Home Respiratory Purchase Agreement (quoted above in paragraph 148) has been available to each of the DME Supplier Defendants. At that link and available for download is the Respironics "Medicare Fraud and Abuse Guide," which states that a DME supplier is considered a "health care provider"[6] and further states that a "kickback" means "anything of value" including "free equipment" and "training programs."[7]

154.     Also available for download at the link in the Sleep and Home Respiratory Purchase Agreement (quoted above in paragraph 148) is another manual entitled PHI901-a72en: *Understanding and Complying with the Medicare/Medicaid Fraud and Abuse Laws and Rules*. This manual defines a "kickback" as "anything … of value" including "free … services".

155.     Also available for download at the link in the Sleep and Home Respiratory Purchase Agreement (quoted above in paragraph 148) is the Respironics "Code of Conduct". In its current version (last revised December 2018), the code defines "health care professionals" to include "DME suppliers." [8] The Code of Conduct prohibits Respironics employees from providing gifts or other things of value to health care professionals, including, specifically,

---

[6] Guide, at 12.
[7] *Id.* at 14.
[8] Code, at 6.

information relating to "economics support": "Philips [Respironics] must not provide customized … health economics support specific to the individual Health Care Provider."[9]

156.     The guidance quoted in the foregoing paragraphs regarding kickbacks, has been set forth in substantially the same terms and content, since February 1, 2016, in documents available for download at the link in the Sleep and Home Respiratory Purchase Agreement (quoted above in paragraph 148).

157.     The kickback scheme alleged herein violated the guidance and policies set forth in each of the documents available for download at the link in the Sleep and Home Respiratory Purchase Agreement (quoted above in paragraph 148).

## THE PARTICULAR FALSE CLAIMS

158.     Each claim for reimbursement for an At-Issue Product, submitted  a DME Supplier Defendant to CMS after the start of the kickback scheme (February 1, 2016), was a false claim for purposes of the FCA because each such claim was tainted by the kickbacks alleged herein.

159.     Respironics's intent and purpose of providing the HMS data was to induce the DME Supplier Defendants to recommend to doctors and patients to order one of the Respironics At-Issue Products, listed in the Appendix to this Complaint.

## CLAIMS FOR RELIEF

## COUNT ONE

(Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*)

160.     This is a civil action by Relator, acting on behalf of and in the name of the United States, against the Defendants under the False Claims Act.

---

[9] *Id.* at 21.

161.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

162.    The DME Supplier Defendants have knowingly presented or has caused to be presented false or fraudulent claims for payment by the United States, in violation of 31 U.S.C. § 3729(a)(1)(A).   Respironics has knowingly caused those false or fraudulent claims to be presented.

163.    The DME Supplier Defendants have knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).   Respironics has knowingly caused those false or fraudulent claims to be presented.   Respironics has also knowingly made or used, or caused to be made or used, false records or statements to get claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).   Such false records or statements include, at a minimum, Respironics's statements pursuant to the CIA.

164.    The DME Supplier Defendants have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).   Respironics has knowingly caused those obligations to pay or transmit money to be concealed or improperly avoided or decreased.

165.    Because of the Defendants' conduct set forth in this Count, the United States has suffered damages in the hundreds of millions of dollars, with the exact amount to be determined at trial.

166.    In addition, Respironics wrongfully retaliated against the whistleblower.   He was demoted, harassed, isolated, and denied promotions by Respironics in retaliation for bringing to

Respironics' attention the fraudulent conduct set forth above.  This retaliation violated 31 U.S.C. § 3730(h).

## COUNT TWO

(Alaska Medical Assistance False Claim and Reporting Act,
Alaska Stat. Ann. § 09.58.010 *et seq.*)

167.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

168.    Based on the foregoing allegations, the Defendants are liable under Alaska Stat. Ann. § 09.58.110.

## COUNT THREE

(California False Claims Law, Cal. Gov. Code § 12650 *et seq.*)

169.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

170.    Based on the foregoing allegations, the Defendants are liable under Cal. Gov. Code § 12650 *et seq.*

## COUNT FOUR

(California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871 *et seq.*)

171.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

172.    Based on the foregoing allegations, the Defendants are liable under Cal. Ins. Code § 1871 *et seq.*

## COUNT FIVE

(Colorado Medicaid False Claims Act, Col. Rev. Stat. 25.5-4-303.5 through 25.5-4-310)

173.	Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

174.	Based on the foregoing allegations, the Defendants are liable under Col.Rev.Stat.25.5-4-303.5 *et seq.*

## COUNT SIX

(Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*)

175.	Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

176.	Based on the foregoing allegations, the Defendants are liable under Conn. Gen. Stat. § 4-274 *et seq.*

## COUNT SEVEN

(Delaware False Claims & Reporting Act, 6 Del. Code §1201 *et seq.*)

177.	Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

178.	Based on the foregoing allegations, the Defendants are liable under the Delaware False Claims & Reporting Act, 6 Del. Code §1201 *et seq.*

## COUNT EIGHT

(District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.*)

179.	Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

180.	Based on the foregoing allegations, the Defendants are liable under D.C. Code § 2-308.01 *et seq.*

## COUNT NINE

(Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*)

181.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

182.    Based on the foregoing allegations, the Defendants are liable under Fla. Stat. § 68.081 *et seq.*

## COUNT TEN

(Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168, *et seq.*)

183.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

184.    Based on the foregoing allegations, the Defendants are liable under the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168, *et seq.*

## COUNT ELEVEN

(Hawaii False Claims Law, HRS § 661-21 *et seq.*)

185.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

186.    Based on the foregoing allegations, the Defendants are liable under the Hawaii False Claims Law, HRS § 661-21 *et seq.*

## COUNT TWELVE

(Illinois Whistleblower Reward & Protection Act, 740 ILCS 175/1 *et seq.*)

187.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

188.    Based on the foregoing allegations, the Defendants are liable under the Illinois Whistleblower Reward & Protection Act, 740 ILCS 175/1 *et seq.*

189.     Respironics' retaliation against the whistleblower violated 740 ILCS 175/4(g).

## COUNT THIRTEEN

(Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*)

190.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

191.     Based on the foregoing allegations, the Defendants are liable under the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*

## COUNT FOURTEEN

(Indiana False Claims & Whistleblower Protection Law,
Ind. Code § 5-11-5.5.-1 *et seq.* (2005))

192.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

193.     Based on the foregoing allegations, the Defendants are liable under the Indiana False Claims & Whistleblower Protection Law, Ind. Code § 5-11-5.5-1 *et seq.*

194.     Respironics' retaliation against the whistleblower violated Ind. Code § 5-11-5.5-8(a).

## COUNT FIFTEEN

(Iowa False Claims Act, Iowa Code § 685.1 *et seq.*)

195.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

196.     Based on the foregoing allegations, the Defendants are liable under Iowa Code § 685.1 *et seq.*

## COUNT SIXTEEN

(La. R.S. 46:438.1 *et seq.*)

197.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

198.    Based on the foregoing allegations, the Defendants are liable under La. R.S. 46:438.1 *et seq.*

### COUNT SEVENTEEN

(Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*)

199.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

200.    Based on the foregoing allegations, the Defendants are liable under the Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*

### COUNT EIGHTEEN

(Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, § 5A *et seq.*)

201.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

202.    Based on the foregoing allegations, the Defendants are liable under Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, § 5A *et seq.*

### COUNT NINETEEN

(Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.601, *et seq.*)

203.    Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

204.    Based on the foregoing allegations, the Defendants are liable under the Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.601, *et seq.*

### COUNT TWENTY

(Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*)

205.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

206.     Based on the foregoing allegations, the Defendants are liable under Minn. Stat. § 15C.01 *et seq.*

## COUNT TWENTY-ONE

(Montana False Claims Act, Mont. Code Ann. § 17-8-401)

207.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

208.     Based on the foregoing allegations, the Defendants are liable under Mont. Code Ann. § 17-8-401.

## COUNT TWENTY-TWO

(Nevada Submission of False Claims to State or Local Government Act,
Nev. Rev. Stat. Ann. § 357.010 *et seq.*)

209.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

210.     Based on the foregoing allegations, the Defendants are liable under Nev. Rev. Stat. Ann. § 357.010 *et seq.*

## COUNT TWENTY-THREE

(New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1)

211.     Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

212.     Based on the foregoing allegations, the Defendants are liable under N.J. Stat. Ann. § 2A:32C-1.

## COUNT TWENTY-FOUR

(New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*)

213. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

214. Based on the foregoing allegations, the Defendants are liable under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*

## COUNT TWENTY-FIVE

(New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*)

215. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

216. Based on the foregoing allegations, the Defendants are liable under NY State Fin. Law, Art. 13.

## COUNT TWENTY-SIX

(North Carolina False Claims Act, N.C. Gen. Stat. Ann. § 1-605 *et seq.*)

217. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

218. Based on the foregoing allegations, the Defendants are liable under N.C. Gen. Stat. Ann. § 1-605 *et seq.*

## COUNT TWENTY-SEVEN

(Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. tit. 63, § 5053.1 *et seq.*)

219. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

220. Based on the foregoing allegations, the Defendants are liable under Okla. Stat. Ann. tit. 63, § 5053.1 *et seq.*

## COUNT TWENTY-EIGHT

(Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*)

221. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

222. Based on the foregoing allegations, the Defendants are liable under R.I. Gen. Laws § 9-1.1-1 *et seq.*

## COUNT TWENTY-NINE

(Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*)

223. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

224. Based on the foregoing allegations, the Defendants are liable under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

## COUNT THIRTY

(Texas False Claims Act, Texas Human Resources Code, § 36.001 *et seq.*)

225. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

226. Based on the foregoing allegations, the Defendants are liable under the Texas False Claims Act, Tex. Hum. Res. Code Ann. § 36.001, *et seq.*

## COUNT THIRTY-ONE

(Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*)

227. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

228. Based on the foregoing allegations, the Defendants are liable under the Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*

## COUNT THIRTY-TWO

(Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*)

229. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

230. Based on the foregoing allegations, the Defendants are liable under Va. Code Ann. § 8.01-216.1 *et seq.*

## COUNT THIRTY-THREE

(Washington Health Care False Claim Act, Wash. Rev. Code Ann. § 48.80.010 *et seq.*)

231. Relator realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

232. Based on the foregoing allegations, the Defendants are liable under Wash. Rev. Code Ann. § 48.80.010 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for the following relief:

233. On Counts 1 through 33, judgment for the United States or the State, as applicable, against Defendants in an amount equal to three times the damages the federal or state plaintiff government, respectively, has sustained because of the Defendants' actions, plus a civil penalty of $11,000 (or such other maximum amount as may be provided by law) for each violation;

234. On Counts 1 through 33, an award to Relator of the maximum allowed under the federal or state law under which suit is brought by the Relators on behalf of the federal or state plaintiff, respectively;

235. Against the Defendants, attorneys' fees, expenses and costs of suit; and

236.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Relator requests that this matter be tried before a jury.

DATED: June 7, 2021                    Respectfully submitted,


BY:  */s/ William S. Norton*

William C. Carmody (*pro hac vice to be filed*)
Arun Subramanian (*pro hac vice to be filed*)
Steven M. Shepard (*pro hac vice to be filed*)
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, Fl. 32
New York, NY 10019
Telephone: (212) 336-8330

**MOTLEY RICE LLC**
James W. Ledlie (D.S.C. Bar No.7841)
William S. Norton (D.S.C. Bar No. 11343)
Joshua C. Littlejohn (D.S.C. Bar No. 10426)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jledlie@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com


*COUNSEL FOR RELATOR*

# APPENDIX A: AT-ISSUE PRODUCTS

| ITEM NO. | DESCRIPTION | PRODUCT CATEGORY | ITEM CATEGORY | HCPCS |
|---|---|---|---|---|
| DSX200S11 | DreamStation CPAP, DOM | Sleep Therapy (DreamStation) | DreamStation CPAP | E0601 + A9279 |
| DSX200H11 | DreamStation CPAP w/ Humid, DOM | Sleep Therapy (DreamStation) | DreamStation CPAP | E0601 + E0562 + A9279 |
| DSX200T11 | DreamStation CPAP w/ Humid/HT, Dom | Sleep Therapy (DreamStation) | DreamStation CPAP | E0601 + E0562 + A4604 + A9279 |
| DSX200S11C05 | DreamStation CPAP with Cell Modem | Sleep Therapy (DreamStation) | DreamStation CPAP | |
| DSX200S11W05 | DreamStation CPAP with Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation CPAP | |
| DSX200H11C05 | DreamStation CPAP w/Humid & Cell Modem | Sleep Therapy (DreamStation) | DreamStation CPAP | |
| DSX200H11W05 | DreamStation CPAP w/Humid & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation CPAP | |
| DSX200T11C05 | DreamStation CPAP w/Humid/HT & Cell Modem | Sleep Therapy (DreamStation) | DreamStation CPAP | |
| DSX200T11W05 | DreamStation CPAP w/Humid/HT & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation CPAP | |
| DSX400S11 | DreamStation CPAP Pro, DOM | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + A9279 |
| DSX400H11 | DreamStation CPAP Pro w/ Humid, DOM | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + E0562 + A9279 |
| DSX400T11 | DreamStation CPAP Pro w/ Humid/HT, Dom | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + E0562 + A4604 + A9279 |
| DSX400S11C05 | DreamStation CPAP Pro with Cell Modem | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | |
| DSX400S11W05 | DreamStation CPAP Pro with Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | |
| DSX400H11C | DreamStation CPAP Pro w/Humid & Cell Modem | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + E0562 + A9279 |

| | | | | |
|---|---|---|---|---|
| DSX400H11W | DreamStation CPAP Pro w/Humid & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + E0562 + A9279 |
| DSX400T11C | DreamStation CPAP Pro w/Humid/HT & Cell Modem | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + E0562 + A4604 + A9279 |
| DSX400T11W | DreamStation CPAP Pro w/Humid/HT & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation CPAP Pro | E0601 + E0562 + A4604 + A9279 |
| DSX500S11 | DreamStation Auto CPAP, DOM | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + A9279 |
| DSX500H11 | DreamStation Auto CPAP w/ Humid, DOM | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + E0562 + A9279 |
| DSX500T11 | DreamStation Auto CPAP w/ Humid/HT, Dom | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + E0562 + A4604 + A9279 |
| DSX500S11C05 | DreamStation Auto CPAP with Cell Modem | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | |
| DSX500S11W05 | DreamStation Auto CPAP with Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | |
| DSX500H11C | DreamStation Auto CPAP w/Humid & Cell Modem | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + E0562 + A9279 |
| DSX500H11W | DreamStation Auto CPAP w/Humid & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + E0562 + A9279 |
| DSX500T11C | DreamStation Auto CPAP w/Humid/HT & Cell Modem | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + E0562 + A4604 + A9279 |
| DSX500T11W | DreamStation Auto CPAP w/Humid/HT & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation Auto CPAP | E0601 + E0562 + A4604 + A9279 |
| DSX600S11 | DreamStation BiPAP Pro DOM | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + A9279 |
| DSX600H11 | DreamStation BiPAP Pro w/ Humid, DOM | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + E0562 + A9279 |
| DSX600T11 | DreamStation BiPAP Pro w/ Humid/HT, Dom | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + E0562 + A4604 + A9279 |
| DSX600S11C05 | DreamStation BiPAP Pro with Cell Modem | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | |
| DSX600S11W05 | DreamStation BiPAP Pro with Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | |
| DSX600H11C | DreamStation BiPAP Pro w/Humid & Cell Modem | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + E0562 + A9279 |
| DSX600H11W | DreamStation BiPAP Pro w/Humid & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + E0562 + A9279 |

| | | | | |
|---|---|---|---|---|
| DSX600T11C | DreamStation BiPAP Pro w/Humid/HT & Cell Modem | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + E0562 + A4604 + A9279 |
| DSX600T11W | DreamStation BiPAP Pro w/Humid/HT & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation BiPAP Pro | E0470 + E0562 + A4604 + A9279 |
| DSX700S11 | DreamStation Auto BiPAP DOM | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + A9279 |
| DSX700H11 | DreamStation Auto BiPAP w/ Humid, DOM | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + E0562 + A9279 |
| DSX700T11 | DreamStation Auto BiPAP w/ Humid/HT, Dom | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + E0562 + A4604 + A9279 |
| DSX700S11C05 | DreamStation Auto BiPAP with Cell Modem | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | |
| DSX700S11W05 | DreamStation Auto BiPAP with Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | |
| DSX700H11C | DreamStation Auto BiPAP w/Humid & Cell Modem | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + E0562 + A9279 |
| DSX700H11W | DreamStation Auto BiPAP w/Humid & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + E0562 + A9279 |
| DSX700T11C | DreamStation Auto BiPAP w/Humid/HT & Cell Modem | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + E0562 + A4604 + A9279 |
| DSX700T11W | DreamStation Auto BiPAP w/Humid/HT & Wi-Fi Modem | Sleep Therapy (DreamStation) | DreamStation Auto BiPAP | E0470 + E0562 + A4604 + A9279 |
| DSX900S11 | DreamStation BiPAP autoSV | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 |
| DSX900H11 | DreamStation BiPAP autoSV w/Humid | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 + E0562 |
| DSX900T11 | DreamStation BiPAP autoSV  w/ Humid/HT | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 + E0562 + A4604 |
| DSX900H11C | DreamStation BiPAP autoSV w/Humid w/Cell Mdm | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 + E0562 + A9279 |
| DSX900T11C | DreamStation BiPAPautoSV w/Humid/HT w/Cell Mdm | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 + E0562 + A4604 + A9279 |
| DSX900S11W05 | DreamStation BiPAP autoSV w/Wi-Fi Mdm | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | |
| DSX900S11C05 | DreamStation BiPAP autoSV w/Cell Mdm | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | |
| DSX900H11W | DreamStation BiPAP autoSV w/Humid w/Wi-Fi Mdm | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 + E0562 + A9279 |

| | | | | |
|---|---|---|---|---|
| DSX900T11W | DreamStation BiPAP autoSV w/Humid/HT w/Wi-Fi Mdm | Sleep Therapy (DreamStation) | DreamStation BiPAP autoSV | E0471 + E0562 + A4604 + A9279 |
| DSG500S11 | DreamStation Go Auto w/BT, DOM | Sleep Therapy (DreamStation Go) | DreamStation Go | |
| DSG400S11 | DreamStation Go w/BT, DOM | Sleep Therapy (DreamStation Go) | DreamStation Go | |
| DS220S | REMstar SE, w/ SD Slot, DOM | Sleep Therapy | CPAP Basic | E0601 + A7037 |
| DS220HS | REMstar SE, w/ Humid, SD Slot, DOM | Sleep Therapy | CPAP Basic | E0601 + E0562 + A7037 |
| DS220TS | REMstar SE, w/ Heated Tube, SD Slot,DOM | Sleep Therapy | CPAP Basic | E0601 + E0562 + A4604 |
| DS220S04C | REMstar SE, w/ SD Slot, w/Cell Modem | Sleep Therapy | CPAP Basic | |
| DS220HS04C | REMstar SE, w/ Humid, SD Slot, w/Cell Modem | Sleep Therapy | CPAP Basic | |
| DS220TS04C | REMstar SE, w/ Heated Tube, SD Slot,w/Cell Modem | Sleep Therapy | CPAP Basic | |
| DS260HS | REMstar Plus w/Hum, SysOne, 60Srs, DOM | Sleep Therapy | CPAP Plus | E0601 + E0562 + A9279 |
| DS460S | REMstar Pro C-Flex+, Sys One 60 Srs, DOM | Sleep Therapy | CPAP Pro | E0601 + A9279 |
| DS460HS | REMstar Pro C-Flex+,w/HumSysOne60Srs,DOM | Sleep Therapy | CPAP Pro | E0601 + E0562 + A9279 |
| DS560S | REMstar Auto A-Flex, Sys One, 60 Srs,DOM | Sleep Therapy | CPAP Auto | E0601 + A9279 |
| DS560HS | REMstar AutoA-Flex w/Hum,SysOne60Srs,DOM | Sleep Therapy | CPAP Auto | E0601 + E0562 + A9279 |
| DS560TS | REMstar Auto w/HT Hum,Sys One,60 Srs,DOM | Sleep Therapy | CPAP Auto | E0601 + E0562 + A4604 + A9279 |
| DS660S | BiPAP Pro BiFlex, Sys One 60 Srs, DOM | Sleep Therapy | Bi-Level Pro | E0470 + A9279 |
| DS660HS | BiPAP Pro BiFlex w/Hum Sys One 60Srs,DOM | Sleep Therapy | Bi-Level Pro | E0470 + E0562 + A9279 |
| DS760S | BiPAP Auto BiFlex, Sys One 60 Srs, DOM | Sleep Therapy | Bi-Level Auto | E0470 + A9279 |
| DS760HS | BiPAP Auto BiFlex w/Hum Sys One 60SrsDOM | Sleep Therapy | Bi-Level Auto | E0470 + E0562 + A9279 |
| DS760TS | BiPAP Auto BiFlex w/HTHum SysOne60SrsDOM | Sleep Therapy | Bi-Level Auto | E0470 + E0562 + A4604 + A9279 |
| DS960XS | BiPAP autoSV ADV 60 Srs, 30cm DOM | Sleep Therapy | Bi-Level AutoSV | E0471 |
| DS960XHS | BiPAP autoSV ADV w/Hum 60Srs, 30cm DOM | Sleep Therapy | Bi-Level AutoSV | E0471 + E0562 |
| DS960XTS | BiPAP autoSV ADV w/HTHum 60Srs, 30cm DOM | Sleep Therapy | Bi-Level AutoSV | E0471 + E0562 + A4604 |

| | | | | |
|---|---|---|---|---|
| DS960XS04C | BiPAP autoSV ADV 60 Srs, 30cm w/Cell Modem | Sleep Therapy | Bi-Level AutoSV | |
| DS960XHS04C | BiPAP autoSV ADV w/Hum 60Srs, 30cm w/Cell Modem | Sleep Therapy | Bi-Level AutoSV | |
| DS960XTS04C | BiPAP autoSV ADV w/HTHum 60Srs, 30cm w/Cell Modem | Sleep Therapy | Bi-Level AutoSV | |
| DS1060S | BiPAP S/T C Series - Domestic | Home Ventilation | BiPAP S/T | E0471 + A7037 + A9279 |
| DS1060HS | BiPAP S/T C Series  Core Package | Home Ventilation | BiPAP S/T | E0471 + E0562 + A7037 + A9279 |
| DS1060TS | BiPAP S/T C Series Core Pack,Htd Tube | Home Ventilation | BiPAP S/T | E0471 + E0562 + A4604 + A9279 |
| DS1060S04C | BiPAP S/T C Series w/Cell Modem | Home Ventilation | BiPAP S/T | |
| DS1060HS04C | BiPAP S/T C Series Core Pkg w/Cell Modem | Home Ventilation | BiPAP S/T | |
| DS1060TS04C | BiPAP S/T C Series Core Pkg,Htd Tube w/Cell Modem | Home Ventilation | BiPAP S/T | |
| DS1160S | BiPAP AVAPS C Series, Domestic | Home Ventilation | BiPAP AVAPS | E0471 + A7037 + A9279 |
| DS1160HS | BiPAP AVAPS C Series Core Package, DOM | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A7037 + A9279 |
| DS1160TS | BiPAP AVAPS C Series Core Pack, Htd Tube | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A4604 + A9279 |
| DS1160HS04C | BiPAP AVAPS C Series Core Pkg w/Cell Modem | Home Ventilation | BiPAP AVAPS | |
| DS1160TS04C | BiPAP AVAPS C Series Core Pkg,Htd Tube w/Cell Modem | Home Ventilation | BiPAP AVAPS | |
| DSX1030S11 | DreamStation BiPAP S/T | Home Ventilation | BiPAP S/T | E0471 |
| DSX1030H11 | DreamStation BiPAP S/T with Humidifier | Home Ventilation | BiPAP S/T | E0471 + E0562 |
| DSX1030T11 | DreamStation BiPAP S/T with Humidifier and Heated Tube | Home Ventilation | BiPAP S/T | E0471 + E0562 + A4604 |
| DSX1030S11C05 | DreamSation BiPAP S/T w/Cellular Modem | Home Ventilation | BiPAP S/T | |
| DSX1030H11C | DreamStation BiPAP S/T with Humidifier w/Cellular Modem | Home Ventilation | BiPAP S/T | E0471 + E0562 + A9279 |
| DSX1030T11C | DreamStation BiPAP S/T with Humidifier and Heated Tube w/Cellular Modem | Home Ventilation | BiPAP S/T | E0471 + E0562 + A4604 + A9279 |
| DSX1030S11W05 | DreamStation BiPAP S/T w/Wi-Fi Modem | Home Ventilation | BiPAP S/T | |
| DSX1030H11W | DreamStation BiPAP S/T with Humidifier w/Wi-Fi Modem | Home Ventilation | BiPAP S/T | E0471 + E0562 + A9279 |

| | | | | |
|---|---|---|---|---|
| DSX1030T11W | DreamStation BiPAP S/T with humidifier and heated tube w/Wi-Fi Modem | Home Ventilation | BiPAP S/T | E0471 + E0562 + A4604 + A9279 |
| DSX1130S11 | DreamStation BiPAP AVAPS | Home Ventilation | BiPAP AVAPS | E0471 |
| DSX1130H11 | DreamStation BiPAP AVAPS with Humidifier | Home Ventilation | BiPAP AVAPS | E0471 + E0562 |
| DSX1130T11 | DreamStation BiPAP AVAPS with Humidifier Heated Tube | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A4604 |
| DSX1130S11C05 | DreamStation BiPAP AVAPS w/Cellular Modem | Home Ventilation | BiPAP AVAPS | |
| DSX1130H11C | DreamStation BiPAP AVAPS with Humidifier Cellular Modem | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A9279 |
| DSX1130T11C | DreamStation BiPAP AVAPS with Humidifier Heated Tube Cellular Modem | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A4604 + A9279 |
| DSX1130S11W05 | DreamStation BiPAP AVAPS w/Wi-Fi Modem | Home Ventilation | BiPAP AVAPS | |
| DSX1130H11W | DreamStation BiPAP AVAPS with humidifier w/Wi-Fi Modem | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A9279 |
| DSX1130T11W | DreamStation BiPAP AVAPS with humidifier and heated tube w/Wi-Fi Modem | Home Ventilation | BiPAP AVAPS | E0471 + E0562 + A4604 + A9279 |
| 1054260 | Trilogy100 Ventilator, U.S.A. | Trilogy | Trilogy | E0465 OR E0466 |
| 1040005 | Trilogy 200 Ventilator, U.S.A. | Trilogy | Trilogy | E0465 + A9279 OR E0466 + A9279 |
| 1054260B | Trilogy100 Ventilator, U.S.A. | Trilogy | Trilogy | E0465 + A9279 OR E0466 + A9279 |
| 1040005B | Trilogy 200 Ventilator, U.S.A. | Trilogy | Trilogy | E0465 + A9279 OR E0466 + A9279 |